WILLIAM J. PORTANOVA, State Bar No. 106193
Attorney at Law
400 Capitol Mall, Suite 1100
Sacramento, CA 95814
Telephone: (916) 444-7900
Fax: (916) 444-7998
Portanova@TheLawOffices.com

Attorney for Defendant
MARY SUE WEAVER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Case No. 2:15-CR-00087-GEB |
|---|---|---|
| Plaintiff, | ) | **SENTENCING MEMORANDUM** |
| MARY SUE WEAVER, | ) | Date:  June 22, 2018 |
|  | ) | Time: 9:00 a.m. |
| Defendant. | ) | Judge: Hon. Garland E. Burrell, Jr |

## I.

## INTRODUCTION

Mary Sue Weaver, a butcher's daughter, graduated from high school in 1971. Four years later she was married and starting a family and in 1992 began supplementing the household income by working at Placer Title as an escrow officer. By 2000, she was divorced and alone.

In 2004, Ms. Weaver met Abe Alizadeh and in 2005 she committed the instant offenses. Ten years later she was indicted.

Ms. Weaver makes no excuses for her behavior. She knowingly provided illegal professional favors to her employer's biggest local commercial customer Abe Alizadeh in violation of the law, most significantly holding his down payment checks for several days until particular real estate development loans funded and portions of those funds were provided to Mr.

Alizadeh to cover his original down payment checks. This occurred on at least two occasions out of the hundreds of transactions she conducted with Mr. Alizadeh and thousands of other real estate transactions in her career. Ms. Weaver was not rewarded for these illegal favors she granted to Mr. Alizadeh. To the contrary, she received nothing extra from her employer and nothing from Mr. Alizadeh aside from his continuing business relationship with her employer.

Aside from these acts, Ms. Weaver has always lead and continues to lead a law-abiding life. In 2013 she remarried and lives quietly with her husband Norm, who is now 83. For the past year, Norm's serious medical problems have necessitated her spending almost all of her time with him, due to a rapidly advancing macular degeneration.

At a time when she should be considering retirement and Social Security and caring for her husband, Mary Sue Weaver is instead facing incarceration.

Ms. Weaver is deeply remorseful for her past conduct and has accepted full responsibility for her actions. She is fundamentally a good-natured, generous, and hard-working person with no criminal history whatsoever and is loved and respected by her family and friends.

## II.

### IN DETERMINING A SENTENCE, THE COURT SHOULD CONSIDER THE GUIDELINES AND THE FACTORS LAID OUT IN 18 U.S.C. 3553(a).

In *Rita v. United States*, 551 U.S. 338 (2007) the Supreme Court stated that a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. *Id* at 551 U.S., at 347–348. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines are not the only consideration, however. *Id*. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. *Id*. at 51.

As stated in 18 U.S.C. § 3553(a), the factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

  (2) the need for the sentence imposed--

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

  (3) the kinds of sentences available;

  (4) the kinds of sentence and the sentencing range established for;

  (5) any pertinent policy statement;

  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

  (7) the need to provide restitution to any victims of the offense.

### 1. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.

Highly relevant--if not essential--to the selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. *Pepper v. United States*, 131 U.S. 1229 (2011) (citing *Williams v. New York*, 337 U.S. 241, 246-247 (1949) (overruled on other grounds).

"Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civic, charitable, or public service are not ordinarily considered under the Guidelines. See United States Sentencing Commission, Guidelines Manual 5H1.1-6, 11, and 12 (Nov. 2006). <u>These are, however, matters that § 3553(a) authorizes the sentencing judge to consider.</u>" *Rita v. United States*, 551 U.S. 338, 364-365 (2007). (Emphasis added).

Sentencing judges are statutorily authorized to consider these matters via 18 U.S.C. 3661: "No limitation shall be placed on the information concerning the background, character, and

conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

In that regard, defendant Mary Sue Weaver, age 65, has been a model citizen for most of her life. Ms. Weaver has worked hard, paid her taxes, raised her family, and has accepted responsibility for these offenses.

The Court may consider a defendant's lack of a criminal record as a mitigating factor during sentencing. *United States v. Autrey,* 555 F.3d 864, 874 (9th Cir. 2009). Ms. Weaver has no prior criminal record. Aside from the events leading to this current matter she has lived the life of a law-abiding citizen and has, so far, raised a like-minded family.

Ms. Weaver's social support system is rock solid, and includes her husband, daughter, mother, sister, and many friends.

**2. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense; to Afford Adequate Deterrence to Criminal Conduct; to Protect the Public from Further Crimes of the Defendant; and to provide the Defendant with Needed Education or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.**

**(a) To Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense.**

There is no question that the offense is serious, and Ms. Weaver makes no excuses for her past conduct. Ms. Weaver clearly understands that her conduct constituted a clear violation of federal law.

Ms. Weaver respects the law. Her activities leading up to this case represent a dramatic departure from an established history of responsible behavior.

While imprisonment may be a just punishment in this case, 18 U.S.C 3553(a) "contains an overarching provision instructing district courts to 'impose a sentence sufficient, <u>but not greater than necessary</u>' to accomplish the goals of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). (Emphasis added to the original). Ms. Weaver already respects the law and is deeply remorseful for her past conduct.

**(b) To Afford Adequate Deterrence to Criminal Conduct; and**

**(c) To Protect the Public From Future Crimes by the Defendant.**

Ms. Weaver will be the first person in her family to have suffered such a conviction, and there is no doubt that the chances of her ever re-offending is zero. Her participation in this scheme was out of character for her and her family and there is nothing in her history which provides any indication of future misconduct.

**(d) To Provide the Defendant With Needed Education or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.**

Rehabilitation is a factor for the Court to consider at sentencing. *United States v. Grant*, 664 F.3d 276, 279-280 (9th Cir. 2011).

Ms. Weaver is an excellent candidate for rehabilitation. She has the desire and the drive, and she truly seeks to recover her life from this unfortunate detour. It has been thirteen years since the offense, and during that time Ms. Weaver has returned to her lifelong pattern of working hard and taking care of her family. She has thus far responded very well to pre-trial supervision and has been making amends with her family and friends.

**3 & 4.  The Kinds of Sentences Available; the Kinds of Sentence and the Sentencing Range Established for the Offense.**

The charges to which Ms. Weaver pled carry no mandatory minimum sentence. The low end of the guidelines calls for imprisonment of 63 months. Pursuant to the plea agreement and Ms. Weaver's cooperation, the government has agreed to recommend a lower sentence. Under the unique circumstances of this case, any amount of imprisonment imposed by the Court will serve the ends of justice.

**5. Any Pertinent Policy Statement.**

The guidelines are advisory only. *United States v. Booker*, 543 U.S. 220, 245 (2005). Moreover, "The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009). <u>The sentence should be sufficient, but no greater than necessary to accomplish the goals of sentencing.</u>

**6. Unwarranted Sentencing Disparities**

The Sentencing Guidelines do not seek to eliminate all disparities, but only those that are <u>unwarranted</u>. See *U.S. v. Plouffe*, 436 F.3d 1062 (9th Cir. 2005). This is consistent with the spirit of *Pepper v. United States*, 131 U.S. 1229 (2011): "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Underlying this tradition is the principle that "the punishment should fit the offender and not merely the crime."

Ms. Weaver's co-defendant Abe Alizadeh has already been sentenced by this court to a term of fifty-six months upon the recommendation of the government. Mr. Alizadeh was clearly the primary beneficiary of the offenses to which Ms. Weaver has plead guilty, and Mr. Alizadeh clearly controlled the greater business and real estate transactions and, more importantly, received all of the financial benefits.

Ms. Weaver, on the other hand, received her salary from Placer Title Company and nothing more. While these facts do not in any way exculpate Ms. Weaver or excuse her criminal behavior, it is instructive to note that the prime mover in the case, at the time a billionaire businessman with hundreds of successful real estate and business transactions on his resume, has received a sentence of fifty-six months.

In the context of this particular criminal case, it would be appropriate for Ms. Weaver to be sentenced to a substantially lower amount than her co-defendant. The contrast with Mr. Alizadeh is striking. Ms. Weaver was a useful tool in a much larger toolbox which was owned and operated at the direction of and for the benefit of Mr. Alizadeh. Ms. Weaver is clearly guilty and remorseful for the crimes she has committed, and she does not attempt to deny her role in these offenses. However, sentencing Ms. Weaver to a substantially lower sentence than that recommended by the government based on the unique and individual circumstances of her case will not lead to an "unwarranted" disparity, but rather will accurately reflect her true culpability.

**7. The Need to Provide Restitution to Any Victims of the Offense.**

Restitution in this case has been agreed to by Ms. Weaver in her Plea Agreement.

### III.

### **CONCLUSION**

For the above stated reasons and law, Ms. Weaver respectfully requests that the Court exercise its discretion to sentence Ms. Weaver to a term of imprisonment substantially lower than that meted out to co-defendant Abe Alizadeh.  While it is clear that the mere passage of time does not in and of itself justify a lesser sentence then that which could have originally been imposed, it is also clear that a prison sentence need only be as long as is necessary to adequately punish the criminal conduct.  In Ms. Weaver's case, it can honestly be said that any sentence of incarceration, whatever the length and however served, will serve such a purpose while maintaining the highest standards of justice and promoting continued respect for the Federal law.

It is therefore respectfully requested that Ms. Weaver be sentenced to be incarcerated for a term of twelve months and one day. Such a sentence is appropriate in these unusual circumstances, particularly where Ms. Weaver has otherwise led an honest life, has earned a 5k motion for downward departure by cooperating with the government, and most importantly, has demonstrated that, although she committed the crimes alleged in 2005, Ms. Weaver has spent the last thirteen years demonstrating her successful rehabilitation.

Dated:  June 15, 2018                                     Respectfully submitted,

/s/ William J. Portanova

WILLIAM J. PORTANOVA
Attorney for Defendant
MARY SUE WEAVER